## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INSYS THERAPEUTICS, INC., *et al.*, | ) | Case No. 19-11292(JTD) |
| | ) | (Jointly Administered) |
| Liquidating Debtors. | ) | |
| | ) | |
| INSYS LIQUIDATION TRUST, by and through | ) | |
| WILLIAM HENRICH, as LIQUIDATING | ) | |
| TRUSTEE, | ) | Adv. No. 21-50176(JTD) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MCKESSON CORPORATION, RXC | ) | |
| ACQUISITION COMPANY (SUCCESSOR BY | ) | |
| MERGER TO MCKESSON SPECIALTY | ) | |
| ARIZONA, INC.) AND NDC HEALTH | ) | |
| CORPORATION (D/B/A RELAY HEALTH). | ) | |
| | ) | |
| Defendants. | ) | **Re:  D.I. 14** |

## <u>OPINION AND ORDER</u>

Plaintiff Insys Liquidation Trust, by and through William Henrich as Liquidating Trustee

(the "**Trustee**") commenced this action to avoid and recover allegedly preferential and

fraudulent transfers.[1] Defendants McKesson Corporation d/b/a RXCrossRoads by McKesson

("**McKesson**"), RelayHealth Pharmacy Solutions ("**RelayHealth**"), and McKesson Specialty

Arizona, Inc. ("**MSAZ**") (collectively "**Defendants**") moved to dismiss pursuant to Federal

Rules of Civil Procedure 8, 9, and 12(b)(6), made applicable by Federal Rules of Bankruptcy

Procedure 7008, 7009, and 7012.[2] For the reasons set forth below, the Motion is denied in part

and granted in part.

---

[1] Adv. D.I. 1 (the "**Complaint**").
[2] Adv. D.I. 14 (the "**Motion**" and the "**Opening Brief**")

**BACKGROUND**

Debtors were a specialty pharmaceutical company that developed and commercialized certain drugs and novel drug delivery systems for targeted therapies. Defendants were parties to multiple prepetition agreements with Debtors pursuant to which they assisted with the development, operationalization, implementation, and maintenance of certain programs related to the drugs that Debtors sold. Defendants and Debtors were also parties to a distribution agreement, pursuant to which Defendant McKesson purchased pharmaceutical products from Debtors.[3]

Debtors commenced their bankruptcy cases on June 10, 2019. As part of their first day motions, Debtors filed a Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Authority to (I) Maintain and Administer Prepetition Customer Programs, Promotions, and Practices and (II) Pay and Honor Related Prepetition Obligations (the "**Customer Motion**").[4] The Customer Motion named Defendants as "critical customers" and requested authorization to pay all prepetition amounts owed to Defendants, among others, in order to continue to receive necessary services provided by such customers. The motion was granted and a Final Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Authority to (I) Maintain and Administer Prepetition Customer Programs and (II) Pay and Honor Related Prepetition Obligations (the "**Customer Order**") was entered.[5] The Customer Order provides that "The Debtors are authorized, but not directed . . . to maintain and administer the Customer Programs," which counsel for Defendants confirmed during the hearing included those involving Defendants.[6]

---

[3] Opening Brief at 3-4.
[4] D.I. 9.
[5] D.I. 232.
[6] D.I. 232, ¶¶ 2.

2

On February 23, 2021, the Trustee filed the Complaint asserting six causes of action that seek to (i) avoid prepetition transfers to defendant RelayHealth totaling $15,524.17 and to defendant MSAZ totaling $139,296.90 (the "**Transfers**") and recover the value of those transfers pursuant to 11 U.S.C. §§ 547, 548, 549, and/or 550; and (ii) object to the claims Defendants filed in Debtors' bankruptcy cases.  Defendants moved to dismiss all counts. The Trustee consented to dismissal of the third count.  I will therefore address the remaining five counts only.

### LEGAL STANDARD

This Motion is brought under Rules 8(a), 9(b), and 12(b)(6).  Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a).  This statement must provide defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 45 (1957).  Where a complaint alleges fraud, Rule 9(b) mandates that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. Proc. 9(b).

A Rule 12(b)(6) motion challenges the sufficiency of the factual allegations in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The court must draw all reasonable inferences in favor of the plaintiff. *See, e.g., Alpizar-Fallas v. Favero,* 908 F.3d 910, 914 (3d Cir. 2018).  On a motion to dismiss, "[t]he defendant bears the burden to show that the

plaintiff's claims are not plausible." *In re LSC Wind Down, LLC*, 610 B.R. 779, 783 (Bankr. D. Del. 2020).

In weighing a motion to dismiss, the court should undertake a three-part analysis. "First, the court must take note of the elements needed for a plaintiff to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Iqbal*, 556 U.S. at 675). Second, the court must separate the factual and legal elements of the claim, accepting all the complaint's well-pled facts as true and disregarding any legal conclusions. *Id.*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Santiago*, 629 F.3d at 130.

## DISCUSSION

### I.   Count I: 11 U.S.C. § 547

The first cause of action seeks to avoid the Transfers as preferential under Section 547 of the Bankruptcy Code, which provides that the Trustee may avoid:

Any transfer of an interest of the debtor in property –

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made –
    (A) on or within 90 days before the date of the filing of the petition;
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –
    (A) the case were a case under chapter 7 of this title
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title

11 U.S.C. § 547.  Defendants argue that this claim should be dismissed because the Customer

Order authorized the payments in question and therefore precludes the Trustee from establishing

the requirement of subsection (5) of Section 547: that they received more by the Transfers than

they would have in a chapter 7 liquidation.  Specifically, Defendants argue that the Transfers fall

within the authorization of the Customer Order and, accordingly, had the payments not been

made pre-petition, Defendants would have nevertheless been paid in full pursuant to the

Customer Order.  In support of this position, Defendants rely primarily on this Court's decision

in *Official Committee of Unsecured Creditors v. Medical Mutual of Ohio (In re Primary Health

Systems)*, 275 B.R. 709 (Bankr. D. Del. 2002), and the Third Circuit's opinions in *In re

Freidman's*, 738 F.3d 547, 560-61 (3d Cir. 2013) and *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d

311 (3d Cir. 2003) and posit that "under Third Circuit law, the Customer Order is the law of the

case and Plaintiff cannot avoid any transfers that were – or would have been – authorized by the

Customer Order."[7]

---

[7]  Opening Br. at 2.  In their Reply Brief, Defendants also argue that the claims are barred because they
were not disclosed in the disclosure statement.  Because this argument was not raised in the opening brief,
I need not consider it.  However, even if it were properly raised, I find it is without merit.  The cases cited
by Defendants in support of this proposition are all distinguishable as they either involve a debtor's
failure to disclose a very large and potentially lucrative claim from which creditors could have benefited
or they involved a debtor that affirmatively represented there were no preference claims only to file them
months later. See *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418 (3d Cir. 1988)
("The original plan failed to alert the creditors to the possible financial benefits enuring to them upon the
successful prosecution of the claim."); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d
314, 325 (3d Cir. 2003) (finding failure to disclose "enhance[d] the debtor's bargaining position by
making the pot that creditors look[ed] for recovery appear smaller than it really [was]."); *In re Galerie
Des Monnaies, Ltd.*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985) ("[A] debtor who stated in its disclosure
statement that it has no preference actions and thereby implies that it investigated the possibility of such
claims, and failed to amend its disclosure statement upon discovering same may not thereafter reverse its
field and commence a preference action for its own benefit.").  Here, the disclosure statement indicates
that the Debtors estimated there to be more than $30 million in potential avoidance liability, which they
were still investigating.  D.I. 956 at 49.  While the specific claims contained in the Complaint may not
have been expressly disclosed, the Debtors were under no obligation to do so, especially given that the
amount in controversy here is only a small fraction of the amount of avoidance liability estimated.

The Trustee disagrees with Defendants' characterization of the law, and instead cites to a string of cases from this Court for the proposition that orders like the Customer Order (often referred to as "critical vendor orders") do not automatically bar preference claims.[8]  The Trustee also argues that the Customer Order was discretionary, not mandatory so there was no obligation to pay Defendants.  Lastly, the Trustee argues that the Customer Order contains express language that makes clear that preference claims were never waived.  I agree with the Trustee.

To begin, the question of whether a creditor received more through a prepetition transfer than it would have in a liquidation scenario is generally a factual one that is not best resolved on a motion to dismiss.  Judge Walrath explained this in *In re Hayes Lemmerz Int'l, Inc.* on a nearly identical motion where the defendant, Export, argued that the complaint should be dismissed because the plaintiff could not prove that the prepetition transfers were greater than Export would have received in a chapter 7 liquidation:

> [W]e cannot dismiss the Complaint on this basis for two reasons.
>
> First, if at trial the Plaintiff presents evidence showing that Export would have recovered less than $ 286,385.66 from the Debtors' estates, it could satisfy the requirements of section 547(b)(5)(A). Thus, there may exist facts that, if proved, would entitle the Plaintiff to the relief it seeks.
>
> Second, Rule 8(a) of the Federal Rules of Civil Procedure does not require that a plaintiff prove its allegations in the complaint, rather it demands only a short, plain statement of the claim "that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Posman v. Bankers Trust Co. (In re Lomas Fin'l Corp.), Adv. No. A-97-245, 1999 WL 33742299, *2 (Bankr. D. Del. July 28, 1999). In the Posman case, the Court outlined what must be included in a preference complaint to survive a motion to dismiss. The complaint must include: (a) an identification of the nature and amount of each antecedent debt, and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.
>
> The Complaint in this case complies substantially with this requirement[.]

---

[8]  Adv. D.I 18 ("**Answering Brief**") at 7.

*In re Hayes Lemmerz Int'l, Inc.*, 313 B.R. 189 (Bankr. D. Del. 2004).

Like in *Hayes Lemmerz*, the Complaint here complies with these requirements.  The schedule attached to the Complaint identifies either RelayHealth or MSAZ as the relevant creditor and shows the dates and amounts of each debt incurred by the Debtors, together with date, amount, invoice number, and check number.  This satisfies the pleading requirements of Rule 8(a).  The Trustee is therefore entitled to an opportunity to take discovery and gather evidence that might prove that the amounts received were more than would have been received in a liquidation scenario.

The existence of the Customer Order here does not change this result.  The *Hayes Lemmerz* decision is once again instructive.  In denying the motion to dismiss in *Hayes Lemmerz*, Judge Walrath also rejected the defendant's argument that the critical vendor order operated as a bar to preference claims.  Noting first that the payments at issue were made before the critical vendor order was entered and therefore could not have been protected by the order, she further held that "even if Export had received some payments under the Critical Vendor Order, it does not follow that it was entitled to receive payment of all pre-petition claims.  The Order was permissive, not mandatory." *Hayes Lemmerz*, 313 B.R. at 193.  Judge Walrath further held that:

> [w]hile Export is correct in stating that the Critical Vendor Order is the law of the case, this does nothing to support its Motion to Dismiss.  As noted previously, the Critical Vendor Order did not identify Export as a critical vendor, did not require that Export's pre-petition claims be paid in full and did not provide that any preferential payments previously made to Export could not be recovered.

*Id.* at 193-94.  Likewise, here, Defendants were paid before the Customer Order was entered, the Customer Order authorizes but does not mandate payment, and it does not provide that previously made payments could not be recovered.  In fact, the Customer Order expressly

provides that it does not waive any claims or causes of action.[9]  Accordingly, the Customer Order does not, as a matter of law, operate to bar the Trustee's preference claims.

While the Defendants are correct that the so called "critical vendor defense" has worked to bar claims at this early stage in at least one case, that was on a very narrow set of facts that are not present here.  In *Primary Health*, Judge Fitzgerald granted defendant's motion to dismiss plaintiff's preference claims on the ground that they were barred by the Court's previously entered "Benefits Order" which authorized payment of wages, salaries, and employee benefits, stating that "the order became the law of the case" and "if the payment falls within the authorization granted by the Benefits Order, it is protected from the Committee's § 547 challenge."  *Primary Health*, 275 B.R. 709, 711 (Bankr. D. Del. 2002).  But, as she later clarified in *Vistar Corp. v. USOP Liquidating LLC* and *USOP Liquidating LLC v. United Stationers, Inc. (In re U.S. Office Products Co.)*, her ruling in *Primary Health* does not stand for the general proposition that entry of a critical vendor order forecloses subsequent preference liability:

> [M]y *Primary Health* decision was based on the fact that those were employees with priority claims. . . .
>
>  [T]he payments that were made pursuant to the order in that case were within the priorities.  Not one person got a dime more than the priority amounts.  They would've been entitled to those priority amounts in any event in the Chapter 7 ahead of the unsecured creditors … You're looking here [in *U.S. Office Products*] at simply having one unsecured creditor as opposed to another unsecured creditor.  That wasn't the situation in *Primary Health*.  It was a creditor group that had priority claims as opposed to unsecured priority claims, and in the pecking order of the Bankruptcy Code the priorities get paid first.

*U.S. Office Products*, Adv. Nos. 02-7192 and 03-50990, Hearing Tr. at 8, 48-49 (Bankr. D. Del. Oct. 15, 2004); *see also In re Zenith*, 319 B.R. 810, 816 (Bankr. D. Del. 2005) (discussing same).

---

[9]  See Customer Order, D.I. 232, ¶ 5 ("Nothing contained … in this Final Order is intended to be or shall be construed as … (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder.").

Here, the Defendants hold general unsecured claims, not priority claims. Therefore, unlike the Court in *Primary Health*, there is no basis for me to conclude at this stage that they would have been paid in full in a liquidation scenario.

Other cases cited by Defendants, where the "critical vendor defense" has been successful, are also readily distinguishable. In fact, a review of the case law cited by the parties demonstrates that the "critical vendor defense" has only been successful in the Third Circuit where either (1) the debtor is required to pay the prepetition claims, either by order, stipulation, agreement, or statute; or (2) the creditor against whom the preference action is asserted holds a priority claim and would therefore have unquestionably been paid in full in a liquidation scenario. *See e.g., In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, (3d Cir. 2003) (affirming grant of summary judgment where debtors assumed agreements with creditor under section 365(a) and were therefore obligated to pay prepetition claims); *In re AFA Inv. Inc.*, 538 B.R. 237 (Bankr. D. Del. 2015) (denying debtors' motion for summary judgment where debtors entered into post-petition agreement that required them to pay); *In re Primary Health*, 275 B.R. 709 (Bankr. D. Del. 2002) (granting motion to dismiss claims against creditors with priority claims that fell within employee wages and benefits order). These facts are not present here. The facts here are much more closely aligned with the cases in which the "critical vendor defense" has failed. *See Hayes Lemmerz*, 313 B.R. 189, 192-93 (denying motion to dismiss where critical vendor order was permissive not mandatory and payments were made before order was entered); *In re Zenith Indus. Corp.*, 319 B.R. 810, 816-19 (Bankr. D. Del. 2005) (ratifying order striking critical vendor affirmative defense where order was permissive not mandatory, payments were made before order was entered, and payments amounted to half of the cap under the critical vendor order making it too speculative that it would not have been met with an objection); *In re Maxus Energy*

*Corp.*, 615 B.R. 62, 73-74 (Bankr. D. Del. 2020) (denying motion for summary judgment where order authorized but did not direct payment and where size of transfer likely would have drawn objection).

Further, the cases from the Third Circuit that Defendants cite for the proposition that "the Customer Order is the law of the case and Plaintiff cannot avoid any transfers that were – or would have been – authorized by the Customer Order" simply do not support such a sweeping conclusion. In *Friedman's*, the Court was faced with the question of whether "a post-petition payment [made] to a creditor pursuant to a Wage Order entered at a debtor's request [could] reduce the creditor's new value defense – and thereby increase preference liability – the same as it would if the payment had been made pre-petition." *In re Friedman's, Inc.*, 738 F.3d 547, 549 (3d Cir. 2013). In holding that post-petition payments made pursuant to the Wage Order were precluded from consideration in a preference liability analysis the Court observed that "[t]he intended goal of the Order . . . would not be served if the Debtor sought and obtained permission to pay wages to Appellee one week but then sued Appellee for a preference the next." *Id.* at 561. This holding has no relevance here, where the Transfers were not made post-petition but rather prepetition and before the Customer Order was entered.

Likewise, in *Kiwi Air*, the Court considered the bankruptcy court's dismissal of three preference actions where pre-petition payments were made pursuant to agreements that the debtor later assumed under Section 365 of the Code, finding that the debtor was required to pay in order to compel the defendants' continued performance under the agreements at issue. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 315-16 (3d Cir. 2003). The Court affirmed, holding that "the payments to all three of the defendants here are not recoverable as preferences because, had the creditors not received the payments pre-petition, they would have received amounts

reflecting those sums, in any event, when the Bankruptcy Court approved the cures of the assumed agreements." *Id.* The same cannot be said here where the Debtors have not assumed any agreements related to the Transfers and were under no obligation to pay Defendants post-petition. I therefore disagree with the Defendants' conclusion that under Third Circuit law a plaintiff cannot avoid any transfers that were – or would have been – authorized by the Customer Order. My review of the cases makes clear that the fact that a creditor was named in a court order as a "critical" or otherwise important customer of a debtor is not in and of itself enough to bar a preference claim; something more is required. For these reasons, the motion to dismiss with respect to Count I of the Complaint is denied as to defendants, RelayHealth and MSAZ. As noted below, no claim against McKesson is alleged in Count I. *See* footnote 16.

## II.     Count II: 11 U.S.C. § 548

The Complaint's second cause of action seeks to avoid the Transfers pursuant to Section 548 of the Bankruptcy Code, which provides:

> The trustee may avoid any transfer… of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily - -
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)
>
> > (i)     Received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured…

11 U.S.C. § 548(a).  Defendants argue that this claim fails to meet the pleading requirements of both Rule 8(a) and Rule 9(b) because the Trustee has not alleged facts sufficient to support the allegation that the transfer was made for less than reasonably equivalent value.

In response, the Trustee makes three arguments: (1) that a bankruptcy trustee is afforded liberality in pleading fraud; (2) that the question of reasonably equivalent value is one that requires discovery and is not properly resolved on a motion to dismiss; and (3) that the complaint sufficiently pleads a lack of reasonably equivalent value when it alleges that the transferring debtor was not the debtor who incurred the debt.  I agree.

This Court has held that "where a Trustee states a claim for constructive fraud, under the Rule 8(a) pleading requirements, [a]ll that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."  *In re FAH Liquidating Corp.*, 572 B.R. 117, 127 (Bankr. D. Del. 2017).  "Moreover, disputes as to the actual value of the transfer or value given in exchange for the transfer do not need to be decided on a motion to dismiss so long as 'the Trustee has identified the transfer by date and face amount and has alleged that it was for no consideration.'" *Id.* quoting *Buckley v. Merrill Lynch & Co. (In re DVI, Inc.)*, Nos. 03-12656 (MFW), 08-50248 (MFW), 2008 Bankr. LEXIS 2338 (Bankr. D. Del. Sep. 16, 2008).

With respect to reasonably equivalent value, the Complaint alleges that "the Transferring Debtor did not receive reasonably equivalent value in exchange for the Transfers, because either (a) the services and/or goods were in fact less in value than the Transfers or (b) the Transferring Debtor was not the Debtor who incurred the debt."[10]   Defendants argue that these allegations are insufficient because "without further explanation, a transfer made by a debtor to reimburse a

---

[10] Compl. ¶ 32.

creditor for a pre-existing obligation under the terms of an arm's length commercial agreement does not show a lack of reasonably equivalent value."[11]  While Defendants are correct that the existence of an agreement pursuant to which a transfer was made may create a presumption of reasonably equivalent value, the Trustee is entitled to the opportunity to put on evidence that would rebut that presumption and establish that the value received was in fact not reasonably equivalent. *See In re ID Liquidation One, LLC*, 503 B.R. 392, 399-400 (Bankr. D. Del. 2013) ("Under the *Bildisco* 'reasonable value of services' standard, there is a presumption that the contract terms and rate represent the reasonable value of the services or goods provided under the contract.  This presumption can be overcome if the objecting party provides 'convincing evidence to the contrary.'") (internal citations omitted).  This is not a question best resolved on a motion to dismiss. *Charys Liquidating Trust v. McMahan Sec. Co., L.P. (In re Charys Holding Co.)*, 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("Reasonably equivalent value is a fact intensive determination that typically requires testing through the discovery process.").  For this reason, the motion to dismiss Count II of the Complaint is also denied as to defendants RelayHealth and MSAZ.  As noted below, no claim against McKesson is alleged in Count II. *See* footnote 16.

### III.    Counts IV, V, and VI

Lastly, Defendants argue that the fourth, fifth, and sixth causes of action (respectively disallowance of claims pursuant to Section 502(d), objection to the claims pursuant to Section 7.2 of the Plan, and setoff) should be dismissed on two grounds.  First, because they are all dependent on the Trustee's successfully proving either the first, second, or third causes of action, the dismissal of all three of the first counts must also mean dismissal of the last three.  With my rulings above allowing the first three claims to proceed, this argument is moot.  Second,

---

[11] Opening Br. at 19.

Defendants argue that the Complaint appears to be seeking the disallowance of all the Defendants' claims, including the proof of claim filed by McKesson as an individual corporation, when there are no allegations that McKesson is the transferee of any avoidable transfers.  The Trustee did not respond to this argument in his Answering Brief.  Instead, he argues only that these claims should not be dismissed because he states valid avoidance claims against the Defendants.

For certain, the Complaint is less than clear as to who is being sued for what.  While the caption of the Complaint originally named, as a single defendant, "McKesson Corporation d/b/a/ RX Crossroads by McKesson and RelayHealth Pharmacy Solutions and McKesson Specialty Arizona, Inc.," and the body refers only to "the above-captioned Defendant," Defendants pointed out in their Opening Brief that the listed "Defendant" is in fact three separate entities: McKesson, RelayHealth, and MSAZ.  The parties later stipulated to amend the caption,[12] but the Complaint was not amended and refers throughout only to "Defendant," and at no point attributes any action to any individual entity.

Collectively, Defendants have four claims against the Debtors:  one scheduled claim held by MSAZ ("the **MSAZ Claim**"), two scheduled claims held by RelayHealth (the "**RelayHealth Claims**") and one proof of claim filed by McKesson (the "**McKesson Claim**").[13]  The Complaint only expressly identifies the MSAZ Claim.  It does then go on to define "Claims" as the MSAZ Claim "along with any other claim the Debtors scheduled on behalf of Defendant or claims the Defendant filed," which can fairly be read as encompassing both the RelayHealth and McKesson Claims.[14]  But while the Complaint seeks to avoid transfers made to RelayHealth and

---

[12] Adv. D.I. 15, 16.
[13] See D.I. 363 at 264, Opening Brief at 8, and Answering Brief at 11 n.5.
[14] Compl. ¶ 10.

MSAZ, it does not appear to be seeking to avoid any transfers made to McKesson.  The specific transfers set forth on the exhibit annexed to the Complaint were all made to either RelayHealth or MSAZ.  Though the Complaint does broadly define "Transfers" as "all transfers made by the Transferring Debtor of an interest of the Transferring Debtor in property to or for the benefit of Defendant during the Preference Period (whether such transfers presently are reflected on the exhibit annexed hereto or not)," I find this to be insufficient to put McKesson on notice of the claims made against it.[15]  The Complaint alleges no basis whatsoever for the disallowance of McKesson's claims or a setoff against McKesson's claims.[16]

     IT IS HEREBY ORDERED,

     1.     As to Defendant McKesson Corporation, the motion to dismiss Counts I, II, IV, V, and VI is granted without prejudice and with leave to amend;

     2.     As to the remaining defendants, the motion to dismiss Counts I, II, IV, V, and VI is denied.

Dated: July 21, 2021

                               *John T. Dorsey*

                              JOHN T. DORSEY, U.S.B.J.

---

[15] Compl. ¶ 12.

[16] While the Complaint does not appear to state any claim against McKesson individually, in their opening brief Defendants only argued for McKesson's dismissal from the fourth, fifth, and sixth causes of action.  McKesson did assert at the end of its Reply Brief that "to the extent the court does not dismiss the Complaint in its entirety, McKesson, as an individual entity, should be dismissed because Plaintiff alleged no facts that McKesson received an avoidable transfer or that Plaintiff disputes the Proof of Claim."  While procedurally flawed, because the Complaint does not allege any avoidable transfers received by McKesson, I will assume the Trustee is not pressing Counts I and II against McKesson.  If the Trustee believes he has claims for avoidable transfers against McKesson he will need to amend the Complaint to explicitly raise them.